# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Demario Benjamin and Kerochedia Amaker, ) | Civil Action No. 3:16-cv-01141-JMC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| South Carolina Electric & Gas Company and ) | |
| CSX Transportation, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiffs Demario Benjamin and Kerochedia Amaker ("Plaintiffs") filed this action seeking damages from Defendants South Carolina Electric & Gas Company ("SCE&G") and CSX Transportation, Inc. ("CSX"), for the damage caused to their home by flood water released from Lake Murray when SCE&G opened floodgates. (ECF No. 1-1 at 3–10.)

This matter is before the court pursuant to Plaintiffs' Motion to Remand the case to the Lexington County (South Carolina) Court of Common Pleas. (ECF No. 7.) SCE&G opposes the Motion to Remand and asks the court to retain jurisdiction. (ECF No. 8.) For the reasons set forth below, the court **DENIES** Plaintiffs' Motion to Remand.

## I.     RELEVANT BACKGROUND OF PENDING MOTION

Plaintiffs allege that SCE&G is "a public utility" that generates and sells "hydroelectric power through a large body of water known as Lake Murray." (ECF No. 1-1 at 3 ¶¶ 4–5.) Plaintiffs further allege that SCE&G (1) "operates Lake Murray and its affiliated dams under a license and pursuant to governmental regulations[]"; (2) is responsible for "lake management" and for providing "control of the lake so as to benefit the general public as well as Defendant's customers[]"; and (3) "has the power of eminent domain and condemnation . . . ." (Id. at 4 ¶¶ 6–

1

7 & 9.)

Plaintiffs owned a home "located on Smiths Market Road in the Coldstream subdivision." (Id. at ¶ 10.) In October 2015, heavy rain caused a historic "1,000-year probability" flood in Columbia, South Carolina. (ECF No. 6 at 4 ¶ 14.) During the flood, SCE&G allegedly opened three floodgates of the Lake Murray Dam, which resulted in some residential areas receiving an influx of water. (ECF No. 1-1 at 4 ¶ 11–5 ¶ 18.) Plaintiffs' home in the Coldstream subdivision was destroyed as a result of the influx of water. (Id. at 5 ¶¶ 19–21.)

On March 10, 2016, Plaintiffs filed their Complaint in the Lexington County (South Carolina) Court of Common Pleas alleging claims against SCE&G for negligence, inverse condemnation, trespass, and strict liability as a result of its management of water levels at the Lake Murray Dam; and against CSX for negligence, inverse condemnation, and trespass for its maintenance and operation of culverts on a bridge near Plaintiffs' property. (ECF No. 1-1.) On April 13, 2016, SCE&G filed a Notice of Removal (with CSX's consent) removing the action to this court pursuant to 28 U.S.C. §§ 1331, 1367, 1441 & 1446, and provisions of the Federal Power Act ("FPA"), 16 U.S.C. §§ 791–828c.[1] (ECF No. 1.) Plaintiffs filed their Motion to Remand on May 5, 2016, wherein they argue that there is no federal subject matter jurisdiction over their claims. (ECF No. 7.) On May 23, 2016, SCE&G filed opposition to Plaintiffs' Motion to Remand. (ECF No. 8.)

The court considers the merits of Plaintiffs' Motion to Remand below.

---

[1] The Federal Power Act of 1935 indicates congressional intent for "a broad federal role in the development and licensing of hydroelectric power." California v. FERC, 495 U.S. 490, 496 (1990).

## II.     LEGAL STANDARD

A party seeking to remove a case from state to federal court bears the burden of demonstrating that jurisdiction is proper at the time it files its petition for removal. Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996). If federal jurisdiction is doubtful, remand is necessary. Mulchaey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); see Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (noting Congress's "clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction").

The right to remove a case from state to federal court derives solely from 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Id. at § 1441(a). Moreover, in a case that does not contain an allegation of diversity citizenship between the parties, the propriety of removal is based on a district court's "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States"—stated differently, the propriety of removal is based on whether a federal question has been presented. 28 U.S.C. § 1331.

To determine whether an action presents a federal question under 28 U.S.C. § 1331, courts look to the allegations in the plaintiff's well-pleaded complaint to determine whether the action "arises under" federal law or the United States Constitution.[2] Franchise Tax Bd. v.

---

[2] The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 391 (1987) (referencing Gully v. First Nat'l Bank, 299 U.S. 109, 112–13 (1936)). However, "[o]n a motion to remand for lack of subject matter jurisdiction, the court may consider materials outside of the complaint including 'documents appended to a notice

3

Constr. Laborers Vacation Trust, 463 U.S. 1, 9–10 (1983).  A court, in examining the complaint, must first discern whether federal or state law creates the cause of action.

Most cases under federal question jurisdiction "are those in which federal law creates the cause of action."  Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986).  In such cases, United States courts unquestionably have federal subject matter jurisdiction.  Id.  If, however, state law creates the cause of action, federal question jurisdiction depends on whether the plaintiff's "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, . . . ."  Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (quoting Christianson v. Colt. Indus. Operating Corp., 486 U.S. 800, 808 (1988)).  To establish a substantial federal question, the state law claim must "[1] necessarily raise a stated federal issue, [2] actually disputed and [3] substantial, [4] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  Gunn v. Minton, ___ U.S. ___, 133 S. Ct. 1059, 1065 (2013) (citing Grable, 545 U.S. at 313–14)).  If the removing party fails to establish these elements, the removal is not justified under federal law.

---

of removal or a motion to remand that convey information essential to the court's jurisdictional analysis' and may assume the truth of facts raised in the complaint that are non-jurisdictional."  BGC Partners Inc. v. Avison Young (Canada) Inc., No. 2:15-cv-02057-DCN, 2015 WL 7458593, at *1 n.2 (D.S.C. Nov. 24, 2015) (citation omitted).

### III.     ANALYSIS

A.     The Parties' Arguments

   *1. Plaintiffs*

Plaintiffs contend that their case should be remanded because (1) their "causes of action arise under the common law of South Carolina" and (2) "Plaintiffs' causes of action cannot reasonably be interpreted to raise an applicable federal question." (ECF No. 7 at 9.) In response to the allegations in SCE&G's Notice of Removal, Plaintiffs argue that (1) section 825p[3] of the FPA does not confer exclusive jurisdiction of their claims against SCE&G to the federal courts and (2) original jurisdiction over this action pursuant to 28 U.S.C. § 1331 is not established based on SCE&G's arguments that "this action arises under and is controlled by the . . . [FPA]." (ECF No. 7 at 5.) Moreover, because the aforementioned statutes are inapplicable to their claims brought pursuant to state law, Plaintiffs argue that supplemental jurisdiction under 28 U.S.C. § 1367 is also inapplicable. (ECF No. 7 at 6–7.) In support of their arguments, Plaintiffs mainly rely on Engle v. West Penn Power Co., 530 A.2d 913 (Pa. Super. Ct. 1987), a case in which they assert that the state court "addressed the question as to whether Plaintiffs' Common Law claims against Defendant power company for improperly releasing water and causing downstream flooding were within the exclusive jurisdiction of the Federal Court."[4] (ECF No. 7 at 5.)

---

[3] Section 825p of the FPA provides in part that "[t]he District Courts of the United States, . . . shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this chapter or any rule, regulation, or order thereunder." 16 U.S.C. § 825p.

[4] In Engle, the court found that despite a provision providing for the exclusivity of jurisdiction in the federal courts as to a federal regulation, the state court's jurisdiction was proper because the plaintiffs had asserted traditional common law state claims and were not asserting any rights under the federal regulation. Engle, 530 A.2d at 916 (citing Pan Am. Petroleum Corp. v. Super. Ct. of Del., 366 U.S. 656 (1961)). Despite the fact that the defendant utility company was regulated by a federal regulation, the court concluded that it must look to the complaint and there

5

In addition to their request for remand, Plaintiffs assert that because SCE&G "had no objectively reasonable basis for removal" (ECF No. 7 at 9), they "are entitled to an award of all costs and actual expenses, including attorney fees, incurred as a result of Defendant's improper removal." (Id. at 8 (citation omitted).)

   *2. SCE&G*

In the Notice of Removal, SCE&G asserted that the court has exclusive jurisdiction over Plaintiffs' state law claims pursuant to 16 U.S.C. § 825p and original jurisdiction under 28 U.S.C. § 1331 based on the FPA. (ECF No. 1 at 1–2 ¶ 4.) In support of the court's exercise of jurisdiction, SCE&G first cited to information found in the Complaint that referenced a duty to operate the Lake Murray dam under "a license and pursuant to governmental regulations." (Id. at 2 ¶ 8.) SCE&G then provided information concerning the Federal Energy Regulatory Commission ("FERC"),[5] which "is authorized to issue licenses for 'the purpose of constructing, operating, and maintaining' projects 'necessary or convenient . . . for the development, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction.'" (Id. at 3 ¶ 12 (citing 16 U.S.C. § 797(e)).) SCE&G asserted that the FERC has designated Lake Murray and its affiliated dams as the Saluda Hydroelectric Project 516 ("FERC Project 516"). (Id. at 2 ¶ 10.) SCE&G asserted that the FPA vests in the FERC broad and exclusive jurisdiction to regulate FERC Project 516. (Id. at 3 ¶ 11 (citing 16 U.S.C. § 791a; California v. FERC, 495 U.S. 490, 496 (1990)).) SCE&G

---

could not be federal jurisdiction when the complaint fails to allege "the violation of any federal law, rule, regulation or order, nor is the cause of action brought to enforce any liability or duty created by or to enjoin any violation of federal law." Engle, 530 A.2d at 918–919.

[5] The FERC is an independent agency within the Department of Energy, which has jurisdiction over non-federal hydropower development under the FPA.

further asserted that it was licensed by the FERC to continue the operation and maintenance[6] of FERC Project 516; and its license specifically provides as follows:

> This license is subject to the terms and conditions of the [Federal Power] Act, which is incorporated by reference as part of this license, and subject to the regulations the [Federal Energy Regulatory] Commission issues under the provisions of the [Federal Power] Act.
>
> The operations of the Licensee, so far as they affect the use, storage, and discharge from storage of waters affected by the license, shall at all times be controlled by such reasonable rules and regulations as the [Federal Energy Regulatory] Commission may prescribe for the protection of life, health, and property, and in the interests of the fullest practicable conservation and utilization of such waters for power purposes and for other beneficial public uses, including recreational purposes, and the Licensee shall release water from the project reservoir at such a rate in cubic feet per second, or such volume in acre-feet per specified period of time, as the [Federal Energy Regulatory] Commission may prescribe for the purposes hereinbefore mentioned.

(ECF No. 1 at 3 ¶ 14–4 ¶ 15 (citing ECF No. 8-1 at 9, 23).)

As it relates to the foregoing, SCE&G argues that to prove the allegations of their negligence claim, Plaintiffs have to establish what is "required of SCE&G to operate and maintain the Saluda Hydroelectric Project in compliance with the applicable FERC rules and regulations and the duties imposed by the FERC license, including what the license and the rules and regulations require of SCE&G with respect to flood control, if any, related to downstream property owners." (ECF No. 8 at 10.) SCE&G further argues that Plaintiffs' strict liability claim requires them to establish that "SCE&G's maintenance and operation of the dam as a FERC licensee constitutes an 'ultrahazardous' activity that 'necessarily involves a risk of serious harm to the person, land, or chattel of another which cannot be eliminated by the exercise of the utmost care.'" (Id. at 11–12 (citation omitted).)

---

[6] SCE&G asserted that the license for FERC Project 516 was first issued on August 5, 1927, and the project has been operating under annual licenses since that date. (ECF No. 1 at 3 n.1.)

7

SCE&G asserts that the issues in this case compare favorably to issues addressed by other courts in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005),[7] Pressl v. Appalachian Power Co., 2015 WL 5822538 (W.D. Va. Oct. 6, 2015),[8] and Simmons v. Sabine River Auth. La., 732 F.3d 469 (5th Cir. 2013).[9]

---

[7] In Grable, the plaintiff challenged the defendant's removal of the plaintiff's state court action alleging that the Internal Revenue Service ("IRS") had given the plaintiff inadequate notice of sale of real property. Upon its review, the United States Supreme Court held that "federal jurisdiction demands not only a contested federal issue, but a substantial one." Id. at 313. The Court did not articulate a single test for federal jurisdiction over state law claims between non-diverse parties, but instead held that the question of whether federal jurisdiction exists over a state law claim depends on "whether the state-law claim necessarily raises[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal state judicial responsibilities." Id. at 314. Also in Grable, the Court looked at the plaintiff's complaint and found that the plaintiff premised his claim on a failure of the IRS to provide adequate notice as defined by the federal law. Whether the plaintiff was given notice as required by the statute was an essential element of his claim, and the "meaning of the statute is actually in dispute." Id. at 315. Furthermore, the government has a strong interest in the "prompt and certain collection of delinquent taxes." Id. (quoting United States v. Rodgers, 461 U.S. 677, 709 (1983)).

[8] In Pressl, the plaintiffs sought to build a dock on their property that the defendants held an easement over pursuant to a license issued to it by the FERC. The defendant informed the plaintiffs that it had "the ability to control how they use[d] the property below the 800 foot contour level of their property." 2015 WL 5822538, at *3. The plaintiffs filed an action seeking a declaratory judgment that the defendant did not have the ability to control how the plaintiffs used the property. Id. Even though the plaintiffs did not assert any federal issues in their complaint, the court applied the Grable rationale and held that the federal issue in the case was substantial because in order to rule on the plaintiffs' request for declaratory relief, the terms and interpretation of the FERC license would be necessary to the resolution of the case. Id. at *6.

[9] In Simmons, the plaintiffs alleged that their properties were damaged after the defendant opened the spillway gates of the dam that spans the state lines of two states. In a question of first impression, the Court of Appeals for the Fifth Circuit stated that "in order to understand whether the FPA preempts state property damage claims, we look to the text of the Act, its history, and the way in which the Supreme Court, our circuit, and our sister circuits have interpreted it." Id. at 474. The Fifth Circuit then concluded that "the FPA preempts property damage claims based in state tort law where the alleged damage is the result of 'negligently' operating in compliance with a FERC-issued license." Id. In its analysis, the Fifth Circuit in Simmons relied on California v. FERC where the Supreme Court considered whether the FERC had the "exclusive authority to set minimum stream flow rates, thereby preempting California's regulation of the same," and concluded that California's regulations were preempted because of the FPA. Id. at 476. The Fifth Circuit in Simmons further relied on this language to indicate that the Supreme

B.     The Court's Review

Plaintiffs argue that the case should be remanded because the court lacks subject matter jurisdiction when there are only state law claims pleaded in the Complaint. (E.g., ECF No. 7 at 9.) SCE&G asserts that because its "duties and responsibilities with respect to operation of the Saluda Hydroelectric Project are established by and substantially involve federal law, Plaintiff's action therefore is within this Court's original and exclusive jurisdiction pursuant to 28 U.S.C.A. § 1331 and 16 U.S.C.A. § 825p." (ECF No. 8 at 1–2.) To resolve this dispute, the court must ascertain whether any of Plaintiffs' claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314.

*1.   Plaintiffs' First Cause of Action for Negligence*

To assert direct liability based on a negligence claim in South Carolina, a plaintiff must show that (1) defendant owed plaintiff a duty of care;[10] (2) defendant breached this duty by a negligent act or omission; (3) defendant's breach was the proximate cause of plaintiff's injuries; and (4) plaintiff suffered injury or damages. Dorrell v. S.C. DOT, 605 S.E.2d 12, 15 (S.C. 2004) (citation omitted). In their Complaint, Plaintiffs allege a duty of care on the part of SCE&G to (1) properly operate Lake Murray and its affiliated dams as required by a license and pursuant to governmental regulations and (2) "warn downstream residents of the flood" allegedly created by SCE&G's decision to open flood gates at the Lake Murray Dam. (ECF No. 1-1 at 3 ¶ 6, 4 ¶ 13 & 5 ¶ 19.) Plaintiffs further allege that SCE&G breached its alleged duties of care "a. in failing

---

Court had interpreted the FPA as "occupying the field of public water use and power generation except for water use rights." Id.

[10] "Whether the law recognizes a particular duty is an issue of law to be determined by the court." Jackson v. Swordfish Inv., L.L.C., 620 S.E.2d 54, 56 (S.C. 2005) (citation omitted).

to properly maintain water levels; b. in failing to properly check water levels; c. in failing to properly lower water levels in face of impending rain; d. in failing to warn; e. in failing to properly maintain the lake; f. in failing to properly manage the lake; g. in failing to properly anticipate water levels; h. in failing to comply with applicable regulations; i.) in failing to comply with generally accepted lake management standard[s]; h. in opening three flood gates at one time when such opening was not or would have not been necessary if proper management practices had been followed; and k. in overacting once Defendant learned it had not properly managed the lake."  (Id. at 6 ¶ 26.)

In order to determine whether Plaintiffs' negligence claim involves a substantial federal question, the court must look to each element of the cause of action and determine whether a ruling on the claim requires interpretation of an issue of importance to the federal system.  See Gunn, 133 S. Ct. at 1066; Grable, 545 U.S. at 314.  While Plaintiffs' allegations of negligence appear on their face to not reference federal law, federal issues are cognizable as the source for the duty of care resulting from SCE&G's operation and management of water levels at the Lake Murray Dam, and not from the alleged failure to warn.

### a.  State Law Claim Necessarily Raises a Stated Federal Issue

A federal issue is "necessarily raised" when a court must apply federal law to the facts of the plaintiff's case.  Gunn, 133 S. Ct. at 1066.  In this regard, a federal issue is insufficient to establish jurisdiction where the issue is present as only one of multiple theories that could support a particular claim.  See Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816–17 (4th Cir. 2004) ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue."); Mulchaey, 29 F.3d at 153 ("[I]f a claim is supported not only by a theory establishing

federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist.") (citation omitted).

Plaintiffs have not identified any source for the duty of care owed by SCE&G to properly manage and operate the Lake Murray Dam other than a "license" and "governmental regulations." However, under the artful pleading doctrine, a plaintiff may not defeat removal by omitting necessary federal questions. Franchise Tax Bd., 463 U.S. at 22. In this case, Plaintiffs' attempt to avoid reference to federal law through artful pleading is not compelling since the FERC "set[s] the appropriate duty of care for dam operators." Simmons v. Sabine River Auth. La., 732 F.3d at 476–77 (citing 16 U.S.C. § 803(c) ("[T]he licensee . . . shall conform to such rules and regulations as the Commission may from time to time prescribe.")).

As a result, the court finds that the only currently ascertainable source of a duty of care for Plaintiffs' negligence claim against SCE&G for its maintenance and operation of the Lake Murray Dam stems from its status as a licensed FERC project, thereby subjecting SCE&G to the rules and regulations of the FPA and the FERC. See 16 U.S.C. § 797(e); see also 18 C.F.R. § 12.1. Therefore, in any assessment of the merits of Plaintiffs' claim for negligence regarding the maintenance and operation of the Lake Murray Dam, the terms of SCE&G's FERC license, in conjunction with the relevant laws, rules, and regulations provided by the FPA and the FERC, are federal issues necessarily raised in the claim.[11]

---

[11] The court notes that South Carolina has expressly declined to regulate dams owned or license by FERC in its Dam and Reservoirs Safety Act ("DARSA"), S.C. Code Ann. §§ 49-11-110 to -260 (2015). In section 49-11-120(4)(C) (2015), the South Carolina legislature specifically excludes from DARSA dams "owned or licensed by the Federal Energy Regulatory Commission [FERC], the South Carolina Public Service Authority, the Nuclear Regulatory Commission, the United States Corps of Engineers, or other responsible federal licensing agencies considered appropriate by the department; . . . ." Id.

11

### b. Federal Issue Actually Disputed

In this matter, the disputed federal issues are twofold. First, the parties vigorously dispute whether the FPA and the FERC's rules and regulations are applicable to Plaintiffs' negligence claim. Second, the parties dispute what duties are owed to Plaintiffs pursuant to statutory laws, rules, or regulations imposed on SCE&G. Therefore, the court finds that the actually disputed requirement of a substantial federal issue is satisfied.

### c. Substantiality of Federal Issue

"[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; . . . . The substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole." Gunn, 133 S. Ct. at 1066. A federal issue may be substantial where the "state adjudication would 'undermine the development of a uniform body of [federal] law[]'"; where the resolution of the issue has "broader significance . . . for the Federal Government[]"; or where the case presents "a nearly pure issue of law . . . that could be settled once and for all," rather than a "fact-bound and situation-specific" one. Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC, 29 F. Supp. 3d 808, 859–60 (E.D. La. 2014) (quoting Gunn, 133 S. Ct at 1066–67; Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700–01 (2006)). Factors that may have a bearing on the substantiality analysis include the following:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

Mikulski v. Centerior Energy Corp., 501 F.3d 555, 570 (6th Cir. 2007) (citing Empire, 547 U.S. at 700).

In analyzing the substantiality element in this case, the court is tasked with determining whether the FPA and the FERC's rules and regulations are applicable to Plaintiffs' claims. Upon review, the court concludes that these federal issues are "significant to the federal system as a whole," as opposed to only being "significant to the particular parties in the immediate suit." See Gunn, 133 S. Ct. at 1066. In reaching this conclusion, the court finds persuasive the following reasoning offered by the Pressl court in a matter also involving the FPA and the FERC:

> Defendant's license from [the] FERC is sanctioned under the FPA, "a complete scheme of national regulation, promot[ing] the comprehensive development of the water resources of the Nation." Albany Engineering Corp. v. Federal Energy Regulatory Commission, 548 F.3d 1071, 1075 (D.C. Cir. 2008) (citing First Iowa Hydro–Electric Co-op. v. Federal Power Commission, 328 U.S. 152, 180, 66 S. Ct. 906, 90 L. Ed. 1143 (1946)). Specifically, [the] FERC's goal is to administer a uniform oversight of its licensees operating hydroelectric projects. Id. Therefore, the federal issue in this case is substantial, in order to ensure that [the] FERC's Congressionally mandated purpose under the FPA is not diverted and the FERC orders under the project remain consistent and uniform. See Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 607–08 (4th Cir. 2002) (concluding that state law claims against an insurer who issued a flood insurance policy pursuant to National Flood Insurance Program involved a substantial federal question and were properly removed to district court because policy was governed by FEMA's flood insurance regulations); Timberline, 2006 WL 1993557, at *2 ("The meaning of the FERC license is [a] substantial and important issue of federal law that sensibly belongs in a federal court."); see also Grable, 545 U.S. at 314, 125 S. Ct. 2363. The Federal Government has an "obvious concern in maintaining control over [the] engineering, economic, and financial soundness" of water power resource projects licenses by [the] FERC. First Ia. Hydro–Elec. Co-op., 328 U.S. at 172, 66 S. Ct. 906. Therefore, "[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action" in connection to the[] FERC license given to the Defendant. Timberline, 2006 WL 1993557, at *2 (citing Grable, 545 U.S. at 314, 125 S. Ct. 2363).

Pressl, 2015 WL 5822538, at *7.[12]

---

[12] The Pressl court went through each element of the Grable doctrine. First, it found that the plaintiffs would have to prove they had a privilege to use the land in a particular manner, and the court would have to consider the terms of the FERC license to determine whether the plaintiffs' activities would be consistent with the defendant's operation of the dam. 2015 WL 5822538, at *6. Second, the court found the federal issue in the case was actually disputed because the

13

Accordingly, the court finds that the federal issues at stake in this matter are substantial.

### d. Status of Federal-State Balance in Light of the Federal Issue

Federal jurisdiction over a state law claim will only lie if the federal issues at play are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 133 S. Ct. at 1065. "In determining whether finding jurisdiction would disturb the balance of federal and state judicial responsibilities, the Court must consider whether exercising jurisdiction would 'herald an enormous shift of traditionally state cases into federal courts.'" Bd. of Comm'rs, 29 F. Supp. 3d at 863 (quoting Grable, 545 U.S. at 319).

There is no evidence in the FPA or the FERC's rules and regulations that Congress wanted these issues litigated in state courts. Rather, the fact that the FPA includes section 825p, which provides federal courts "exclusive jurisdiction" over cases involving the FPA, demonstrates that Congress affirmatively sought to provide a federal forum for cases like this one. Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC, 103 F. Supp. 3d 1000, 1025 (D. Minn. 2015). Accordingly, the court finds that exercising jurisdiction in this matter will not disturb the balance of federal and state judicial responsibilities.

### e. The Court's Original and Exclusive Jurisdiction

As discussed above, because Plaintiffs' negligence claim involves substantial federal issues under the FPA as it relates to the FERC, the court concludes that it has original jurisdiction over this action under 28 U.S.C. § 1331 and exclusive jurisdiction pursuant to 16

---

defendant's ability to regulate certain activities is in dispute, and the court must interpret the FERC license in resolving the dispute. Id. at *7. Third, the court found the federal issue in the case substantial because the defendant's license was sanctioned under the FPA, and "in order to ensure that [the] FERC's Congressionally mandated purpose under the FPA is not diverted and the FERC orders under the project remain consistent and uniform." Id. The court found that the fourth and final requirement was met because using federal jurisdiction to resolve genuine disagreements over the terms of the FERC license "will portend only a microscopic effect on the federal-state division of labor." Id.

U.S.C. § 825p.

### f. Distinguishing Cases Cited by Plaintiffs

With specific regard to the FPA and the FERC, Plaintiffs cited several non-controlling cases, all decided before Grable, to bolster their arguments for remand.  See generally Pan Am. Petroleum Corp. v. Super. Ct. of Del., 366 U.S. 656 (1961); Engle v. West Penn Power Co., 530 A.2d 913 (Pa. Super. Ct. 1987); Cleveland Elec. Illuminating Co. v. City of Cleveland, 363 N.E.2d 759 (Ohio 1976).  The court finds these cases distinguishable because they for obvious reasons could not apply the Grable standard for determining the existence of a substantial federal issue for jurisdictional purposes.

*2. Plaintiffs' Fourth Cause of Action for Strict Liability*

Strict liability is the imposition of liability on a party without a finding of fault.  Snow v. City of Columbia, 409 S.E.2d 797, 800 (S.C. Ct. App. 1991).  The claimant need only prove that the tort occurred and that the defendant was responsible.  See Wallace v. A. H. Guion & Co., 117 S.E.2d 359, 361 (S.C. 1960) ("Under what has been called the rule of absolute or strict liability, one lawfully engaged in blasting operations is, according to the weight of authority, liable without regard to the question of whether or not he has been negligent, whereby his acts in casting rocks or other debris on adjoining or neighboring premises or highways he causes direct damage to property or causes direct injury to persons thereon.").  South Carolina's common law recognition of strict liability is generally "limited to a few narrowly defined categories such as cattle trespass, public callings, certain kinds of nuisances, and ultra-hazardous activities."  Ravan v. Greenville Cnty., 434 S.E.2d 296, 304 (S.C. Ct. App. 1993) (citing Snow, 409 S.E.2d at 800). In this regard, although it appears that neither the South Carolina legislature nor the South Carolina Supreme Court has declared that one engaged in constructing, maintaining, or

managing a dam is strictly liable for damages caused by those activities, the designation of an activity as abnormally dangerous nonetheless is decided on a case-by-case basis. Id. at 305 (citing T & E Indus., Inc. v. Safety Light Corp., 123 N.J. 371 (N.J. 1991)). Moreover, authorities are split regarding whether the judge or the jury should make the decision. Id. (citing Erbrich Prods. Co. v. Wills, 509 N.E.2d 850, 857 (Ind. Ct. App. 1987)).

In their Complaint, Plaintiffs allege that SCE&G is strictly liable for the damages caused to their home pursuant to its operation of the Lake Murray Dam. (ECF No. 1-1 at 9 ¶¶ 45-48.) Additionally, Plaintiffs argue that this claim arises "under the common law of South Carolina." (ECF No. 7 at 9.) In opposing remand, SCE&G argues that "Plaintiffs can only prevail on their strict liability claim by proving, inter alia, that SCE&G's maintenance and operation of the dam as a FERC licensee constitutes an 'ultrahazardous' activity that 'necessarily involves a risk of serious harm to the person, land, or chattel of another which cannot be eliminated by the exercise of the utmost care.'" (ECF No. 8 at 11–12.)

As with Plaintiffs' negligence claim, the court must ascertain whether Plaintiffs' strict liability cause of action necessarily raises a federal issue. Upon review, the court observes that SCE&G's assertion regarding the standard for establishing a strict liability claim is not the only theory available to Plaintiffs. The court further observes that the Restatement (Second) of Torts § 520 (1977)[13] provides an alternative mechanism to establish whether the release of water

---

[13] Section 520 provides:

> In determining whether an activity is abnormally dangerous, the following factors are to be considered: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

16

through a dam is an ultrahazardous activity.  See Ravan, 434 S.E.2d at 305 ("The trial judge instructed the jury that it could find the corporate respondents' activities abnormally dangerous by considering the factors outlined in Restatement (Second) of Torts § 520.").  As a result, the court finds that Plaintiffs do not necessarily raise a federal issue in their cause of action for strict liability because they can prevail on the claim without resorting to federal law.  Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816–17 (4th Cir. 2004) ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue.") (citation omitted).

Because SCE&G cannot satisfy the first prong of the Grable test–that is, SCE&G failed to show that Plaintiffs' strict liability claim necessarily raises a stated federal issue–the court need not "address the remaining prongs."  Am. Airlines, Inc. v. Sabre, Inc., 694 F.3d 539, 544 (5th Cir. 2012).  Accordingly, Plaintiffs' strict liability claim does not establish the court's subject matter jurisdiction.

> 3. *Plaintiffs' Second Cause of Action for Inverse Condemnation and Third Cause of Action for Trespass*

Although SCE&G makes the conclusory statement that Plaintiffs' claims for inverse condemnation and trespass also "involve and directly challenge SCE&G's compliance with the terms of the FERC Project 516 license, the FPA, and the FERC's rules and regulations[]," SCE&G does not provide any analysis to support the court making this finding.  (ECF Nos. 1 at 5 ¶ 19 & 8 at 19.)  As a result, the court finds that SCE&G cannot satisfy the second prong of the Grable test by demonstrating that Plaintiffs' claims for inverse condemnation and trespass raise "actually disputed" federal issues.  See Louisiana v. Abbott Labs., C/A No. 3:13-cv-00681-BAJ-SCR, 2014 WL 4924329, at *5 (M.D. La. Sept. 30, 2014) ("Defendants conclusory assertions

---

Restatement (Second) of Torts § 520 (1977).

and speculation are insufficient to meet their burden of demonstrating their claims necessarily raise . . . actually disputed issues of federal law."). Accordingly, Plaintiffs' claims for inverse condemnation and trespass do not confer subject matter jurisdiction on the court.

*4. The Court's Supplemental Jurisdiction*

As discussed above, because Plaintiffs' negligence claim involves federal issues under the FPA as it relates to the FERC, the court has original jurisdiction over this action under 28 U.S.C. § 1331 and exclusive jurisdiction pursuant to 16 U.S.C. § 825p. Additionally, the court finds it appropriate to exercise supplemental jurisdiction over Plaintiffs' claims against SCE&G for inverse condemnation, trespass, and strict liability and against CSX for negligence, inverse condemnation, and trespass. 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (Supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as "[t]he state and federal claims . . . derive from a common nucleus of operative fact."); De La Rosa v. Reliable, Inc., 113 F. Supp. 3d 1135, (D.N.M. 2015) ("The court can then exercise supplemental jurisdiction over other claims and parties that 'form part of the same case or controversy under Article III, . . . .'") (citing § 1367 & United Mine Workers, 383 U.S. at 725).

## IV.     CONCLUSION

For the foregoing reasons, the court hereby **DENIES** Plaintiffs' Motion to Remand. (ECF No. 7.)

**IT IS SO ORDERED.**

United States District Judge

June 8, 2016
Columbia, South Carolina